FLORENCE T. NAKAKUNI  #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR.    #3740
Chief, Fraud & Financial Crimes Section

KENNETH M. SORENSON
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  ken.sorenson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 14-00010-01 HG |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S COLLECTIVE |
| | ) | RESPONSE TO DEFENDANT |
| vs. | ) | JENNIFER McTIGUE'S |
| | ) | VARIOUS MOTIONS FILED IN |
| JENNIFER ANN McTIGUE,(01) | ) | COURT DOCUMENTS 68 |
| | ) | AND 69; DECLARATION OF |
| Defendant. | ) | KENNETH M. SORENSON; |
| _____ | ) | CERTIFICATE OF SERVICE |

**GOVERNMENT'S COLLECTIVE RESPONSE TO DEFENDANT
JENNIFER MCTIGUE'S VARIOUS MOTIONS
FILED IN COURT DOCUMENTS 68 AND 69**

**GOVERNMENT'S COLLECTIVE RESPONSE TO DEFENDANT
JENNIFER MCTIGUE'S VARIOUS MOTIONS
FILED IN COURT DOCUMENTS 68 AND 69**

Defendant Jennifer McTigue has filed a
collective group of motions before the Court asserting
a variety of claims and defenses.  Document 68 is
styled, in part, "OMNIBUS MOTION TO SUPPRESS EVIDENCE
AND FOR RETURN OF SEIZED PROPERTY … ."  Document 69 is
styled, in part, "OMNIBUS MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION, TERRITORIAL AND
LEGISTATIVE JURISDICTION … ."  Each motion is supported
by affidavits which assert facts and make independent
demands, along with various other arguably supportive
documents.  For the reasons set forth below, McTigue's
motions must be denied.

## I.   RELEVANT FACTS

McTigue, Marc Melton and Sakara Blackwell
devised a scheme to defraud mortgage companies, escrow
companies and good faith purchasers of real estate they
controlled by fraudulently releasing valid mortgages
recorded with the Hawaii Bureau of Conveyances.  The

scheme began when Blackwell, who was in default on her $800,000 plus in mortgages with J.P. Morgan Chase and Bank of America, arranged with McTigue and Melton to fraudulently release her mortgages by recording fake "Satisfaction of Mortgage" forms with the Hawaii Bureau of Conveyances.  The fake "Satisfaction of Mortgage" was signed by Melton, falsely representing himself to be the Authorized Representative of Mortgage Electronic Services, (MERS) the company representing J.P. Morgan Chase and Bank of America's interests with respect to the loan.  In truth and fact, Melton was not employed by MERS or any banking institution, and had no authority to release the duly recorded mortgages of any financial institution.  Once the mortgage was unlawfully and fraudulently released, McTigue, Melton and Blackwell sold the property and enjoyed a windfall profit since they did not have to pay the existing mortgage.  The properties were sold with full warranty deeds falsely promising the properties to be free of liens and encumbrances.

3

The scheme ultimately encompassed seven (7)

properties and was augmented by the mailing of so

called "Note Tender Agreements," "EFT Tender

Agreements" or "Mortgage Debt Satisfaction Agreements"

to holders of mortgages which purported to pay-off the

outstanding mortgage debt by including a bad check

written on a non-existent or dormant bank account.

These so named agreements warned mortgage holders that

if they did not respond to the mailing of the

agreements within two weeks then Melton, or others,

would have authority to administer the loan.  With this

plausible defense built into their fraud scheme,

McTigue, Melton and Blackwell ultimately released

mortgages on seven (7) properties and made in excess of

$3 million dollars, which they jointly shared.[1]

---

[1]  Rather than rehash the particulars of the seven
separate fraudulent loan releases, the government
directs the Court's attention to the Indictment which
sets forth in detail the particulars of the scheme in
the Manner and Means Section at pages 3-7, and the
Overt Acts section at pages 7-22.

## II.  **RELEVANT PROCEDURAL and INVESTIGATIVE HISTORY**

The investigation was supervised by the undersigned government counsel with the Federal Bureau of Investigation.  On or about September 23, 2013, the government executed three search warrants on email accounts held by McTigue, jennwealth@gmail.com; jenn.mctigue@gmail.com; and nekaicorp@gmail.com.  While difficult to discern, it appears that evidence derived from the execution of these warrants is the subject matter of at least one of McTigue's motions.[2]  The government conducted subsequent investigation acquiring records through the grand jury process and on January 3, 2014 a federal grand jury issued a *sealed* indictment against McTigue, Melton and Blackwell on the instant charges.  On January 7, 2014, prior to their arrest and notice of the Indictment in this case, the FBI obtained a series of search and seizure warrants on Mctigue's residence, safe deposit box and life insurance accounts.

---

[2]  McTigue's motion refers to an "administrative subpoena."  She may misunderstand how the government obtained her electronic communications.

The warrants were accompanied by a motion requesting sealing of the search and seizure warrants, supported by a declaration of government counsel citing the reasons for the request to seal the warrants.  The Declaration recited the standard basis for the request to seal, *ie*. that the investigation was not complete and that disclosure of the existence of the warrants would negatively affect the investigation.  The Declaration stated, "I am informed and believe that said investigation is ongoing and will continue beyond the date of service of the warrant and filing of the return thereon until the matter is presented to the grand jury for indictment or other disposition."  McTigue appears to seize upon this statement in advancing her theory that the Indictment was never actually *presented* to the grand jury.  In McTigue's view, this theory is advanced by the fact that she cannot see the grand jury foreperson's signature on the Indictment.[3]  While difficult to discern, this may be

---

[3]  As the Court is aware, the United States District Court has Ordered that Grand Jury foreperson signatures

6

the basis that McTigue continually refers to the

Indictment as "fictitious."

### III.   DOCUMENT 68 CONTENTIONS

### A.   The Government Did Not Violate the Notice Provisions of the Electronic Communications Privacy Act

McTigue first contends that FBI Special Agent

Nick Baron "violated PUBLIC POLICY Title 2703(b)" by

issuing an administrative subpoena for electronically

stored data.  [Doc. 68, pp. 3-4.]  McTigue then

contends that she did not receive notice, as she

asserts is due under 18 U.S.C. § 2703(b)(1)(B).  It is

unclear what to what "administrative subpoena" McTigue

is referring since the government did not issue any

such subpoenas in this case.  It is true that had the

United States obtained the contents of McTigue's

electronic communications with an administrative

subpoena than the notice provisions of 18 U.S.C.

§ 2703(b)(1)(B) would apply.  However, the United

States acquired all electronic communications evidence

shall be recorded on the back of the last page of the
Indictment to protect their identity.

in this case (*ie*. emails) through search warrants

executed on McTigue's email accounts.   No notice is

required when a warrant is obtained, as here, under the

Federal Rules of Criminal Procedure.   See 18 U.S.C.

§ 2703(b)(1)(A).   Accordingly, McTigue's notice

contentions under are meritless.

**B.** **McTigue's Allegations in Paragraphs 9, 10, 11 and 12 of Motion**

Paragraph 9.   McTigue contends that FBI Special

Agent Nick Baron used the "fruits of his unlawful

search and seizure to obtain further search and seizure

warrant in violation of her constitutional rights.   The

basis for this contention is unclear but it appears

that McTigue is asserting that because administrative

subpoenas were used to acquire her emails and that she

did not get notice than all evidence garnered through

the process must be suppressed.   However, as argued

above, because no administrative subpoenas were

executed in this case, no notice was required.

Paragraph 10.   McTigue contends that Special

Agent Baron violated Rules 41(b), 41(c) and 41(d)(2)(B)

and (C), because he failed to provide a valid affidavit

and for failure to record testimony given or a valid

transcript under Rule 41(d)(2)(C).  It is assumed by

government counsel that McTigue is referring to Rule 41

of the Federal Rules of Criminal Procedure.  McTigue

has failed to particularize her argument, and it is

impossible to discern specifically what her contentions

are.  All affidavits in this case were executed under

oath before the respective magistrate judges.  There is

no requirement that testimony be recorded or a valid

transcript be generated since all of the government's

warrants were based on affidavits.  See Fed. R. Crim.

P. 41(d)(2)(A).  Accordingly, this contention lacks

merit as well.

Paragraph 11.  McTigue contends that government

counsel filed a "fictitious indictment" after admitting

that a grand jury had not been convened.  This

contention is patently ridiculous and not factually

supported. The Indictment indicates itself that it was

filed with the Court on January 3, 2014 and that it was

signed by the foreperson, government counsel and Leslie

Osborne, Chief of the Fraud and Financial Crimes

Section of the United States Attorney's Office.

Paragraph 12.  McTigue charges that government

counsel "continues to violation PUBLIC POLICY by

concealing facts and discoverable exculpatory evidence

from McTigue … ."  McTigue has failed to demonstrate

how government counsel has failed to provide lawfully

discoverable information to her.  The government has

provided McTigue with all discovery due to her under

Fed. R. Crim. P. 16.  The government, at this juncture,

has uncovered *no* information that could be determined

to be exculpatory or impeachment information.

Government counsel recognizes the ongoing duty of the

government to provide such information should it be

discovered.

Further, McTigue's specific contention that

government counsel must provide information to her

related to the "United States Standard General Ledger"

is unsupported either factually or legally.  McTigue

has failed to lucidly demonstrate how the USSGL is

applicable to her case or any defense she might raise.

## IV. DOCUMENT 69 CONTENTIONS

Document 69 is a motion to dismiss for "LACK OF

SUBJECT MATTER JURISDICTION, TERRITORIAL AND

LEGISLATIVE JURISDICTION, AND IN PERSONAM JURISDICTION,

DUE TO GROSS VIOLATIONS OF PUBLIC POLICY, FEDERAL RULES

OF CRIMINAL PROCEDURE, RULE 12(B)3)(b) AND LOCAL RULE

47.  At its core, Document 69 is an attack on the

Court's jurisdiction to hear this case, or probably any

other case for that matter.  McTigue contends that this

Court operates as a "Territorial Court and as a

branch/franchise of the JUDICIARY COURTS OF THE STATE

OF HAWAII, lacking original jurisdiction over criminal

matters as established by PUBLIC POLICY Title 18

§ 3231."  [Doc. 69, p. 3]

Government counsel does not intend to belabor

McTigue's meritless contentions beyond stating that

this Court is a duly appointed United States District

Court and as such it has original jurisdiction over

11

"all offenses against the laws of the United States".

See 18 U.S.C. § 3231.  The offenses alleged in this

case, wire fraud, mail fraud and money laundering are

all offenses "against the laws of the United States."

See 18 U.S.C. §§ 1341, 1343, 1956(h) and 1957.

Accordingly, this Court has proper jurisdiction to hear

and dispose of this case.

The District of Hawaii is also the proper venue

for disposal of this case, since one or more of the

criminal acts alleged were committed in this district.

Fed. R. Crim. P. 18.  See also, 18 U.S.C. § 3237(a)

which provides:

> **(a)** Except as otherwise expressly provided
> by enactment of Congress, any offense
> against the United States begun in one
> district and completed in another, or
> committed in more than one district,
> may be inquired of and prosecuted in
> any district in which such offense was
> begun, continued, or completed.

Since all of the offenses charged herein were

either begun in Hawaii or completed in Hawaii, venue is

proper in this District.

12

## V.   CONCLUSION

For the reasons set forth above, McTigue's motions as set forth in Documents 68 and 69 should be denied and dismissed.

DATED:   September  15 , 2014, at Honolulu, Hawaii.

>                    FLORENCE T. NAKAKUNI
>                    United States Attorney
>                    District of Hawaii
>
>
>                    By/s/ Kenneth M. Sorenson
>                       KENNETH M. SORENSON
>                       Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Jennifer Ann McTigue
c/o NEKAI CORPORATION
1050 Bishop Street, Suite 188
Honolulu, Hawaii   96813


Served Electronically through CM/ECF:

Alvin Nishimura, Esq.

Stand by Counsel for Defendant
JENNIFER ANN McTIGUE


DATED:  September _15_, 2014, at Honolulu, Hawaii.


_/s/ Melena Malunao