IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CR. No. 14-00010-01 HG |
| | ) | |
| vs. | ) | |
| | ) | |
| JENNIFER ANN McTIGUE, (01) | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT McTIGUE'S MOTION ENTITLED "OMNIBUS MOTION TO SUPPRESS EVIDENCE AND FOR RETURN OF SEIZED PROPERTY, UNDER A FICTITIOUS INDICTMENT, FICTITIOUS SUBPOENA, AND SEARCH AND SEIZURE WARRANT UNDER FEDERAL RULES OF CRIMINAL PROCEDURE, RULES 41(h), RULE 12(b)(3)(B) AND LOCAL CRIMINAL RULE 47(a)-(d)" DISMISS (ECF No. 68)**
**AND**
**DENYING DEFENDANT McTIGUE'S MOTION ENTITLED "OMNIBUS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, TERRITORIAL AND LEGISLATIVE JURISDICTION, AND IN PERSONAM JURISDICTION, DUE TO GROSS VIOLATIONS OF PUBLIC POLICY, FEDERAL RULES OF CRIMINAL PROCEDURE, RULE 12(b)(3)(B) AND LOCAL RULE 47" (ECF No. 69)**

Defendant Jennifer Ann McTigue, along with two others, was indicted for unlawful conduct related to a mortgage fraud scheme. Defendant McTigue, appearing *pro se*, has moved to dismiss the indictment for lack of jurisdiction (ECF No. 69) and to suppress evidence (ECF No. 68).

Defendant's Motions (ECF No, 68. 69) are **DENIED**.

<u>PROCEDURAL HISTORY</u>

On January 3, 2014, Defendants Jennifer Ann McTigue, Marc Melton, and Sarah Blackwell were indicted under a 45 count

1

EXHIBIT A

Indictment for conspiracy to launder monetary instruments, wire fraud, mail fraud, and money laundering.

On July 22, 2014, the Magistrate Judge granted Defendant McTigue's motion to allow her to proceed as her own counsel and to have her present counsel serve as standby counsel. (ECF No. 58.)

On August 29, 2014, Defendant McTigue filed:

(1) Defendant's "Omnibus Motion to Suppress Evidence and for Return of Seized Property, Under a Fictitious Indictment, Fictitious Subpoena, and Search and Seizure Warrant Under Federal Rules of Criminal Procedure, Rules 41(h), Rule 12(b)(3)(B) and Local Criminal Rule 47(a-d)" (ECF No. 68), which is hereinafter referred to as "Motion to Suppress"; and

(2) Defendant's "Omnibus Motion to Dismiss for Lack of Subject Matter Jurisdiction, Territorial and Legislative Jurisdiction, and in Personam Jurisdiction, Due to Gross Violations of Public Policy, Federal Rules of Criminal Procedure, Rule 12(b)(3)(B) and Local Rule 47" (ECF No. 69), which is hereinafter referred to as "Motion to Dismiss for Lack of Subject Matter Jurisdiction".

On September 15, 2014, the Government filed an Opposition to Defendant's Motions. (ECF No. 73.)

On September 22, 2014, Defendant McTigue filed a Reply. (ECF No. 77.)

On September 23, 2014, Defendant's Motions came on for hearing. The Government requested a mental competency evaluation and Defendant McTigue did not object. The Court granted the parties' joint oral motion to continue the trial. Hearing on Defendant's Motions was continued until November 24, 2014. (ECF No. 80.)

On October 2, 2014, the Court entered an Order directing a mental competency evaluation as to Defendant McTigue. (ECF No. 81.)

On November 7, 2014, the Court received the Psychological Evaluation and Report as to Defendant McTigue. (ECF No. 84.)

The Court advanced the November 24, 2014 hearing to November 13, 2014. (ECF No. 83.)

On November 10, 2014, Defendant McTigue filed an Emergency Motion objecting to the advancement of the hearing and asking for a sixty day extension of all deadlines in the case. (ECF No. 85.)

The Court denied Defendant's Emergency Motion for an extension of sixty days. (ECF No. 86.)

On November 12, 2014, the Court continued the hearing, set for November 13, 2014, to November 24, 2014 in light of information provided by pretrial services regarding the health condition of Defendant McTigue's mother. (ECF No. 90.)

On November 24, 2014, Defendant's Motions came on for hearing.

## BACKGROUND

According to the Indictment, McTigue, Marc Melton and Sakara Blackwell devised a scheme to defraud mortgage companies, escrow companies and good faith purchasers of real estate by fraudulently releasing valid mortgages recorded with the Hawaii Bureau of Conveyances. The scheme allegedly encompassed seven (7) properties and made in excess of $3 million dollars.

According to the Indictment, Defendants were fraudulently releasing mortgages by recording fake "Satisfaction of Mortgage" forms with the Hawaii Bureau of Conveyances. The Indictment alleges that once a mortgage was unlawfully and fraudulently released, Defendants McTigue, Melton and Blackwell would sell the property and enjoy a windfall profit since they did not have to pay the existing mortgage. The Indictment further alleges that the properties were sold with full warranty deeds falsely promising the properties to be free of liens and encumbrances. According to the Indictment, Defendants also mailed so called "Note Tender Agreements," "EFT Tender Agreements" or "Mortgage Debt Satisfaction Agreements" to holders of mortgages which purported to pay-off the outstanding mortgage debt by including a bad check written on a non-existent or dormant bank account.

## LEGAL STANDARD

**Standard for Motion to Dismiss**

Under Federal Rule of Criminal Procedure 12(b)(2), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." In considering a pretrial motion to dismiss an indictment, the court "must presume the truth of the allegations in the charging instrument." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996). "Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not invade the province of the ultimate finder of fact." United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (internal citations omitted).

## ANALYSIS

**A. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

**1. McTigue's Contentions**

McTigue has filed a 36 page Motion to Dismiss, a lengthy Affidavit signed by her in support, and 11 Exhibits, in which she states she appears:

> by Special Appearance without waiving Any Rights, Remedies or Defenses, Statutory or Procedural, by Notice through a Deposit for a Special Purpose, in the capacity of Grantor, Heir and Beneficiary of the Legal Estate of decedent JENNIFER ANN MCTIGUE® by Intestate Succession through Descent and Distribution.

(ECF No. 69, Motion at pp. 1-2.)

Defendant attached irrelevant documents as exhibits including Defendant McTigue's birth certificate, documents obtained from the Records of the Columbia Historical Society, documents filed with the United States Patent and Trademark Office, and an audit report performed by KPMG LLP of Wells Fargo Securities, LLC. Also attached is a document, marked as Exhibit 10, entitled "International Notice of Election Not to Be Recognized as a Person Before the Law, and Termination of Surety and Underwriting", which states that it was recorded in Kent County Delaware and was signed by Defendant McTigue on August 22, 2014. (ECF No. 69, Motion at Exh. 10.)

In Exhibit 10, McTigue states that she has elected not to be recognized as a person before the law. (Id.) McTigue cites the Universal Declaration of Human Rights. (Id.) Based on Article 6 of the Universal Declaration of Human Rights, she declares:

> It is my free will choice, act and deed, by making this election of self-determination, NOT to be recognized as a legal person and to ONLY be recognized as a living woman and divine living soul, retaining all unalienable, inalienable and imprescriptible rights.

(Id.)

McTigue also declares that the government's failure to recognize her election of self-determination subjects her to slavery and servitude as prohibited by Article 4 of the Universal Declaration of Human Rights and Article 8 of the International Covenant on Civil and Political Rights. (Id.) Later in Exhibit

10, McTigue further expands on her theory that she is a "living woman and divine living soul" separate from her trademarked name. She declares that the right to use her trademarked name has been assigned to a corporate entity:

> All legal rights to use the ens legis Name, JENNIFER ANN MCTIGUE® have been assigned to NEKAI CORP as Trustee, the registered owner of the Name as a trademark under Class 36 for protection from use as a surety and for underwriting services . . .

(Id.) McTigue's "international declaration that she is not to be recognized as person" appears to tie into her theory that this Court does not have jurisdiction over her and also into her theory that she is not responsible for the conduct charged in the Indictment.

McTigue also challenges the Court's jurisdiction in other ways. McTigue repeatedly describes the Indictment as a "fictitious indictment". McTigue seeks dismissal of the Indictment under

> PUBLIC POLICY Federal Rules of Criminal Procedure ("FRCRP"), Rule 12(b)(3)(B) and Local Rule 47 for lack of subject matter jurisdiction, lack of territorial and legislative jurisdiction, lack of in personam jurisdiction and gross violations of PUBLIC POLICY and the limitations placed upon the federal actors by the Constitution of the United States of America.

(ECF No. 69, Motion at p. 2.) McTigue challenges the Court's jurisdiction and venue to maintain the "fictitious indictment" because it "operates as a State Territorial Court and as a branch/franchise of the JUDICIARY COURTS OF THE STATE OF HAWAII,

7

lacking original jurisdiction over criminal matters as established by PUBLIC POLICY Title 18 § 3231." (ECF No. 69, Motion at p. 3.) McTigue spends 13 pages on the unlawful military overthrow of the Kingdom of Hawaii. McTigue's Motion and her Affidavit in support of the Motion are wrought with nonsensical conclusions, including:

> "That the UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII is a privately owned STATE TRADING COMPANY MASQUERADING AS A FEDERAL COURT UNDER THE HAWAII STATE JUDICIARY ACT, using an unregistered Trade Name, "THE UNITED STATES DISTRICT COURT CHAMBER OF JUDGE EZRA" . . . " (Affidavit of McTigue at ¶ 22, ECF No. 69.);

> and

> "That due to the unlawful, continual military occupation, without a formal declaration of war, admitted by the Commander in Chief of the Military, Mctigue, Jennifer Ann, presumed to be doing business as JENNIFER ANN MCTIGUE, has been given the presumptive status of alien enemy under the TRADING WITH THE ENEMY ACT OF 1917 . . . " (Affidavit of McTigue at ¶ 11, ECF No. 69.)

McTigue's Reply continues to challenge the Court's jurisdiction, reiterating that it is not

> a true United States Court established under Article III to administer the raw Judicial Power of the United States therein conveyed, it is created by virtue of the sovereign Congressional faculty, granted under Article IV, Section III, of that instrument, of making all needful rules and regulations respective of territory belonging to the United States.

(ECF No. 77, Reply at 8.)

Along with her challenges to the Court's jurisdiction over this, and any other matter, McTigue argues that the Court "has a

binding duty to recognize her "Affirmative Defense and Claim for Contribution and Indemnification under a maritime insurance policy and Article 38 of the Lieber Code".[1] (ECF No. 69, Motion at p. 2.)

### 2. This Court has Jurisdiction

Courts have repeatedly rejected challenges to jurisdiction based on the illegal overthrow of the Hawaiian Kingdom and membership in the Sovereign Kingdom of Hawaii. See United States v. Lorenzo, 995 F.2d 1448, 1456 (9th Cir. 1993) ("The appellants have presented no evidence that the Sovereign Kingdom of Hawaii is currently recognized by the federal government or that they have received any immunity arising from the existence of the Kingdom. Accordingly, as all the alleged violations occurred in the district of Hawaii, venue was proper under Rule 18 of the Federal Rules of Criminal Procedure and jurisdiction was proper under 18 U.S.C. § 3231."); Baker v. Stehura, Civ. No. 09-00615

---

[1] The Court does not find relevant The Lieber Code relied upon by Defendant. It was promulgated as General Orders No. 100 by President Lincoln on April 24, 1863, provided instructions for the government of armies of the United States in the field. Article 38 provided: "Private property, unless forfeited by crimes or by offenses of the owner, can be seized only by way of military necessity, for the support or other benefit of the army or of the United States. If the owner has not fled, the commanding officer will cause receipts to be given, which may serve the spoliated owner to obtain indemnity." General Orders No. 100: The Lieber Code, Yale Law School, The Avalon Project, (Sept. 23, 2014, 9:55 AM), *available at* http://avalon.law.yale.edu/19th_century/lieber.asp#sec2. It is clearly inapplicable to the present case.

ACK-BMK, 2010 WL 3528987, at *4 (D. Haw. Sept. 10, 2010) (noting that "[t]his argument has been rejected by the Ninth Circuit as well as this Court on repeated occasions" and also by "[t]he Hawai'i state courts"). This Court has jurisdiction under 18 U.S.C. § 3231 and venue is proper under Fed. R. Crim. P. 18 and 18 U.S.C. § 3237.

McTigue cannot continue to challenge the Court's jurisdiction on the basis asserted in her Motion. Doing so, would contravene well-established precedent and this Court's Order.

### 3. The Indictment is Valid

Much of McTigue's argument challenging the Indictment's validity stems from her apparent misunderstanding of the process for obtaining an indictment and criminal law and procedure in general.

For instance, even after the Government explained that having the Grand Jury foreperson sign on the back of the Indictment to protect his/her identity is standard practice, she continues to challenge the Indictment's validity. In her Reply, McTigue takes issue with the "alleged Grand Jury Foreman's" signature on the back of the last page of the Indictment, contending that it "constitutes his/her acceptance of the liability on the commercial security/true bill under Hawaii Commercial Code, codified at HRS Chapter 490, §§ 3-413, 3-414,

10

and 3-415." (Reply at 6.) The sections of the Hawaii Commercial Code cited by McTigue pertain to the obligations of an acceptor, drawer, and indorser with regard to drafts and instruments governed by the commercial code. The Hawaii Commercial Code does not apply to the Indictment. Defendant's contention makes no sense.

There is no evidence that the Government failed to follow proper procedures in obtaining the Indictment or that it is otherwise invalid.

B.  **Defendant's Motion to Suppress**

McTigue's Motion to Suppress and attached Affidavit in Support similarly evidence her lack of understanding of criminal law and procedure. The Indictment is not fictitious and, contrary to McTigue's allegation, the Indictment does not contain "a Fictitious Plaintiff THE UNITED STATES OF AMERICA who is Civilter Mortuus or Civilly Dead and whose property is administered as a trust-fund for the benefit of its stockholders and creditors, including McTigue, Jennifer Ann." (ECF No. 68, Affidavit of McTigue at ¶ 14.)

McTigue appears to challenge the procedures used by the Government to obtain her electronic communications. McTigue contends that the Government failed to follow the procedures for an administrative subpoena, but the Government did not use an administrative subpoena. Rather, the Government acquired all

electronic communications evidence through search warrants executed on McTigue's email accounts. (ECF No. 73, Opposition at p. 5.) No notice to defendant is required when a warrant is obtained. See 18 U.S.C. § 2703(b)(1)(A).

**Testimony of Special Agent Joseph Fangon**

During the November 24, 2014 evidentiary hearing concerning Defendant McTigue's Motion to Suppress, Federal Bureau of Investigation, Special Agent Joseph Fangon testified as to the process for obtaining the Indictment and search warrants. Agent Fangon testified that on January 3, 2014, the Indictment was presented to a grand jury and a true bill was returned and signed by the Grand Jury foreperson. (ECF No. 2.) Agent Fangon testified that, as is standard practice, the Indictment was sealed because the investigation had not been fully completed. At that point, the Defendants did not know that they had been indicted. The purpose of sealing the Indictment was so that the agents could obtain and execute search warrants without any evidence being destroyed or hidden. On January 7, 2014, the Government applied for, and obtained, search warrants signed by the Magistrate Judge which it then executed. After execution of the search warrants and Defendant's arrest, the Magistrate Judge entered an order unsealing the Indictment. (ECF No. 6.)

Agent Fangon also described the process used by the government to obtain Defendant McTigue's electronic

communications prior to the Indictment.  The Government applied for search warrants which were issued by Magistrate Judges. Agent Fangon identified exhibits consisting of applications for search warrants, the issuance of search warrants, and the return on search warrants.  These documents, identified as Exhibits 1(a), 1(b), and 1(c), 2(a), 2(b), and 2(c), and 3(a), 3(b), and 3(c), were admitted into evidence at the hearing.

McTigue has not identified any defects in the process used by the Government to indict her.  In obtaining the Indictment, the Government followed standard procedures.  The Government also properly used standard search warrant procedures to obtain Defendant McTigue's electronic communications and other relevant evidence.  (See e.g., Case No. 1:14-mj-0029-BMK, containing Application for Search Warrant and Warrant to Seize Property Subject to Forfeiture).  McTigue has not raised any issues as to the validity of the search warrants.

**McTigue's Other Contentions**

McTigue's remaining contentions are similarly without merit. McTigue, for instance, appears to argue that she is entitled to a valid transcript or recording of Agent Nick Baron's testimony at the time of obtaining the search warrants. (ECF No. 68, Motion at p. 4.)  There is no such requirement and there is no such transcript or recording.  The government's warrants were based on written affidavits not on live testimony for which there could be

13

a transcript.

Finally, McTigue accuses "Federal Actor Kenneth M. Sorenson" of continuing "to violate PUBLIC POLICY by concealing facts and discoverable exculpatory evidence from McTigue, Jennifer Ann also in violation of the Fourth, Fifth and Sixth Amendments to the Constitution." (ECF No. 68, Motion at p. 5.)  McTigue has failed to provide any plausible factual basis to support this allegation.  Rather, her Motion and Affidavit contain vague, and often unintelligible allegations, for example:

> That the fictitious plaintiff the UNITED STATES OF AMERICA is not a Government Entity, Corporation, Company, Individual or Trust and is Without the UNITED STATES under Title 28 § 1746(1) and has no Legal Authority or Subject Matter, Territorial or Legislative Jurisdiction, or In Personam Jurisdiction to Prosecute fictitious Defendant JENNIFER ANN MCTIGUE® who is neither identified, described, or defined in any Legal Document or Paper Work in the Court Record.

(ECF No. 68, Affidavit of McTigue at ¶ 69.)

McTigue takes issue with language used in prosecutor Kenneth Sorenson's Declaration, signed January 7, 2014, and presented to the Magistrate Judge in support of the Government's application for search warrants.  In support of the Government's application for search warrants, the prosecutor signed a declaration containing the following standard language:

> I am informed and believe that said investigation is on-going and will continue beyond the date of service of the warrant and filing of the return thereon until the matter is presented to the grand jury for indictment or other disposition.

(ECF No. 68, Motion at Exh. 1 ("Declaration of Kenneth M. Sorenson".)  McTigue appears to believe that the language used means that, as of January 7, 2014, the case had not yet been presented to the grand jury.  Based on this statement she concludes that there was no grand jury indictment on January 3, 2014.  McTigue is incorrect.  A valid Indictment, signed by the Grand Jury foreperson on January 3, 2014, has been filed with the Court.  McTigue misinterprets the language used in the standard declaration and ignores the last part of the sentence which includes the phrase "or other disposition."  The purpose of the declaration is to explain the need to seal the search warrants, and the materials presented in support of the search warrants, while the investigation is ongoing.

McTigue has not asserted any viable basis for her motion to suppress.

In summary, this Court has jurisdiction over Defendant McTigue.  McTigue has not stated any valid basis to dismiss the Indictment.  Nor has McTigue identified any valid basis for her motion to suppress evidence.

## CONCLUSION

For the foregoing reasons,

(1) Defendant McTigue's "Omnibus Motion to Suppress Evidence and for Return of Seized Property, Under a Fictitious Indictment, Fictitious Subpoena, and Search

15

and Seizure Warrant Under Federal Rules of Criminal Procedure, Rules 41(h), Rule 12(b)(3)(B) and Local Criminal Rule 47(a-d)" (ECF No. 68) is **DENIED**.

(2) Defendant's "Omnibus Motion to Dismiss for Lack of Subject Matter Jurisdiction, Territorial and Legislative Jurisdiction, and in Personam Jurisdiction, Due to Gross Violations of Public Policy, Federal Rules of Criminal Procedure, Rule 12(b)(3)(B) and Local Rule 47" (ECF No. 69) is **DENIED**.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 10, 2014.



/s/ Helen Gillmor

Helen Gillmor
United States District Judge

_____
U.S. v. McTigue, CR. No. 14-00010-01 HG; **ORDER DENYING DEFENDANT McTIGUE'S MOTION ENTITLED "OMNIBUS MOTION TO SUPPRESS EVIDENCE AND FOR RETURN OF SEIZED PROPERTY, UNDER A FICTITIOUS INDICTMENT, FICTITIOUS SUBPOENA, AND SEARCH AND SEIZURE WARRANT UNDER FEDERAL RULES OF CRIMINAL PROCEDURE, RULES 41(h), RULE 12(b)(3)(B) AND LOCAL CRIMINAL RULE 47(a)-(d)"(ECF No. 68) AND DENYING DEFENDANT McTIGUE'S MOTION ENTITLED "OMNIBUS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, TERRITORIAL AND LEGISLATIVE JURISDICTION, AND IN PERSONAM JURISDICTION, DUE TO GROSS VIOLATIONS OF PUBLIC POLICY, FEDERAL RULES OF CRIMINAL PROCEDURE, RULE 12(b)(3)(B) AND LOCAL RULE 47" (ECF No. 69)**